[Civ. No. 790. Third Appellate District.—April 3, 1911.]

THE PORTERS BAR DREDGING COMPANY, a Corporation, Respondent, v. FRED BEAUDRY, Appellant.

WATER RIGHTS—ACTION TO ENJOIN DIVERSION—PRELIMINARY INJUNCTION—DISCRETION—REVIEW UPON APPEAL.—Where the object of an action is to obtain a permanent injunction against the diversion of a watercourse above plaintiff's lands, to its injury, the question whether a preliminary injunction should be granted therein *pendente lite* is a matter resting largely in the discretion of the trial court to whom the application for such order is presented; and if it does not appear from the record upon appeal from an order granting such preliminary injunction that the discretion of the court has been abused, the order will not be disturbed, regardless of the question whether conflicting affidavits do or do not preponderate against such order.

ID.—APPLICATION UPON VERIFIED COMPLAINT—AVERMENT OF ULTIMATE FACTS SUFFICIENT.—Under section 527 of the Code of Civil Procedure, an injunction *pendente lite* may be applied for upon a verified complaint, without other affidavits, which is only required as a pleading to state the ultimate facts, and not the probative facts. If the ultimate facts pleaded warrant the temporary injunction applied for, then, in the absence of such a counter-showing as would fully overcome or impeach the averments of the complaint, it would be the duty of the court to grant such relief upon the verified complaint.

ID.—SUFFICIENCY OF COMPLAINT TO WARRANT PRELIMINARY INJUNCTION—GROUNDS FOR RELIEF.—Where the complaint for an injunction to restrain the diversion of water by defendant's dam from plaintiff's lands alleged as ground for relief both that the lands of

the plaintiff were riparian to the stream diverted and that the plaintiff was entitled to the amount of water stated in the complaint by appropriation thereof for mining purposes, as against the defendant, and also alleged that the diversion of the water by the defendant has compelled plaintiff to suspend mining operations upon its lands to its irreparable injury, such averments of the complaint, uncontradicted, are sufficient to warrant and sustain the action of the court in granting a preliminary injunction, and it cannot be said that it abused its discretion in granting the same.

ID.—AFFIDAVITS FOR DEFENDANT—LEGAL CONCLUSIONS—PROVINCE OF COURT.—Where defendant, besides denials of the complaint, set up an appropriation, the allegations of which involved, at best, only legal conclusions or the conclusions of the affiant, and the only other affidavit on his behalf merely declared that the statements in defendant's affidavit "are true and correct," such affidavit could have no greater force than to corroborate defendant's conclusions; and it was within the province of the court to determine that such affidavits were insufficient to overcome the verified complaint used both as a pleading and as evidence.

ID.—CONSISTENCY OF GROUNDS FOR RELIEF TO PLAINTIFF.—If there be deemed united in the complaint two causes of action or grounds for relief, seeking practically the same ultimate object, it does not follow merely because certain averments of the one cause of action so pleaded may be in some material particulars inconsistent with those of the other that the temporary injunction should be refused, if either or both causes disclose a reason for the granting thereof. It is held that there is no inconsistency fatal to plaintiff's right to a temporary injunction, between the claims to a riparian right to the waters of the stream diverted and a claim thereto by appropriation.

ID.—RULE AS TO CONSISTENCY OF EVIDENCE.—There is no rule that a party cannot prevail unless the evidence adduced to establish his case or his defense should be "harmonious and consistent throughout all its parts." The general rule is that it is for the trier of the facts to determine the weight and effect of evidence, from whatever source it may come.

ID.—GROUND OF RIPARIAN RIGHTS—USE NOT A CRITERION.—The rights of a riparian proprietor, as such, are not to be tested by the use or uses to which he puts the riparian waters, or whether he uses them at all or not. If one's lands are riparian to a stream of water, the owner of the lands cannot be divested of his rights as such merely because he may either put the waters flowing in such stream to other than a riparian use or not use them for any purpose. The riparian right to the flow of the water over his land in its customary flow is a right of property which is part and parcel of the land itself.

ID.—DIVERSION OF TRIBUTARY STREAM.—The diversion of a tributary stream which flows into the stream on which the plaintiff's lands are riparian is an interference with or diversion of the waters of the stream itself.

APPEAL from an order of the Superior Court of Siskiyou County granting a preliminary injunction. J. S. Beard, Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, and Jas. R. Tapscott, for Appellant.

Taylor & Tebbe, O'Neill & Butler, and Alexander R. Baldwin, for Respondent.

HART, J.—The plaintiff made an application to the court below for an injunction *pendente lite* in this action, and, after a hearing on an order to show cause why said application should not be allowed, an order granting a preliminary injunction was made by the court. From the order granting said injunction this appeal is presented.

The evidence upon which the order appealed from was made consisted of the verified complaint of the plaintiff and two affidavits, filed by defendant, in opposition to the application for the provisional relief asked for.

The purpose of the action is to secure a decree adjudging the plaintiff the owner of the lands described in the complaint and that they are riparian to the South Fork of Scott river, in Siskiyou county; that the plaintiff is the owner and entitled to the possession of three thousand five hundred inches, measured under a four-inch pressure, of the waters of the said South Fork of Scott river and the tributaries thereof, etc.; that the defendant be perpetually enjoined "from erecting and maintaining or erecting or maintaining any dam in the South Fork of Scott river, or any of the tributaries thereof above the lands of plaintiff, and that he may be enjoined and restrained from interfering with the flow of the waters of the said South Fork of Scott river and its tributaries above the lands of plaintiff in any manner when there is only three thousand five hundred inches or less of water therein measured under a four-inch pressure"; that defendant, pending

15 Cal. App.—48

this suit, be enjoined from interfering in any manner with the flow of the waters of said river or its tributaries, etc., above plaintiff's lands.

Whether in a given case an injunction *pendente lite* should be granted or refused is a matter resting largely in the discretion of the trial court to which the application for such an order is presented. This proposition is well settled in this state.

In *Raub* v. *Los Angeles T. Ry. Co.*, 103 Cal. 473, [37 Pac. 374], it is said: "The dissolution or continuance of a preliminary injunction is a matter largely within the discretion of the trial court, and, unless it appears from the records in the case that the discretion has been abused, the action of the court will not be disturbed on appeal," citing the following cases: *Rogers* v. *Tennant*, 45 Cal. 184; *Patterson* v. *Board of Supervisors*, 50 Cal. 344; *Barratt* v. *Floyd*, 54 Cal. 534; *White* v. *Nunan*, 60 Cal. 406.

In *Marks* v. *Weinstock, Lubin & Co.*, 121 Cal. 53, [53 Pac. 362], the rule as thus stated is reaffirmed.

Again, in the comparatively late case of *Miller & Lux* v. *Madera Canal etc. Co.*, 155 Cal. 62, [99 Pac. 511, 22 L. R. A., N. S., 391], the court thus restated the rule: "This is an appeal from an order granting a temporary injunction. It would be superfluous to cite authorities to show that the granting or refusing of a preliminary injunction is a matter resting largely in the discretion of the trial court. Where there is a substantial conflict in the evidence regarding an issue which may affect the discretion of the court in passing upon the application for such injunction, the order will not on appeal be overthrown merely because there may be considerable or even preponderating evidence, which, if believed, would have led to a contrary conclusion. The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him. When the cause is finally tried, it may be found that the facts require a decision against the party prevailing on the preliminary injunction."

Testing the record before us by the principles declared in the foregoing, we are unable to say that the trial court abused the discretion committed to it in a proceeding of this character by allowing the preliminary injunction.

The complaint avers that the plaintiff "is now and for a period of three years or more last past has been a corporation duly organized and existing under the laws of the state of New York and has been, during said time, conducting a mining business and mining operations in the county of Siskiyou, state of California, and that it has fully complied with all the laws of said state so as to entitle it to exercise all its corporate functions therein"; that plaintiff "is now the owner, in possession of, and entitled to the possession of, and plaintiff and its predecessors in interest have been for a period of twenty-five years or more last past the owners of, in the possession of and entitled to the possession of that certain real estate, in the county of Siskiyou, state of California, described as follows." Following this averment is a description of the lands from which, it is asserted, defendant has wrongfully so diverted the waters of Scott river and tributaries as to deprive plaintiff of the full flow or quantity of waters to which it is entitled, either as a riparianist or an appropriator. The complaint, in the first count thereof, then proceeds to allege: "That the South Fork of Scott river is a natural stream of water which in its natural channels flows through the lands of plaintiff above described, and during all the times above mentioned has so flowed through and over said lands, except as hereinafter stated, and all of said lands are riparian to said South Fork of Scott river; that on or about the 11th day of August, 1908, defendant wrongfully and unlawfully and against the will and without the consent of plaintiff, by means of a dam placed in Jackson creek which is tributary to said South Fork of Scott river, diverted away from said tributary about one hundred and fifty inches of the waters thereof and carried the same away from said Jackson creek at a point above the said lands of plaintiff herein, and thereby deprived said lands of plaintiff of the natural flow of the said South Fork of Scott river to the extent of one hundred and fifty inches measured under a four-inch pressure."

In the second count of the complaint it is alleged: "That during all the time that plaintiff and its predecessors in interest have owned their said lands it has diverted, used and appropriated three thousand five hundred inches measured under a four-inch pressure of the waters of the said South Fork of Scott river when there was as much as three thousand five hundred inches measured under a four-inch pressure flowing in said stream, and it has appropriated, diverted and used all of the waters therein when there was less than three thousand five hundred inches measured under a four-inch pressure flowing therein, and during all of said times it and its predecessors in interest have, by means of ditches, conveyed said waters to said lands and there used the same for mining purposes; that the said lands of plaintiff hereinbefore described and all of said lands are placer mining lands and chiefly valuable for the deposits of gold contained therein and in order to profitably work and operate said lands as a mine it is necessary to have three thousand five hundred inches of water for mining purposes, and said water is necessary therefor and beneficial for such purpose; that on or about the 11th day of August, 1908, and while plaintiff was engaged in its mining operations and at a time when there was not three thousand five hundred inches of water measured under a four-inch pressure flowing in the said South Fork of Scott river and its tributaries, defendant wrongfully and unlawfully and without the consent of plaintiff, by means of a dam which he wrongfully and unlawfully placed in Jackson creek, which is a tributary of said South Fork of Scott river, diverted away from said Jackson creek and away from said South Fork of said Scott river about one hundred and fifty inches of water measured under a four-inch pressure; that said water so diverted by defendant was so used by him as to wholly deprive plaintiff thereof; that on or about the 16th day of August, 1908, plaintiff broke the dam of said defendant so erected in Jackson creek as aforesaid and restored the waters so that they would flow down said Jackson creek and into the South Fork of Scott river and thus be available for plaintiff's use, but said defendant, ignoring plaintiff's right in the premises, again constructed said dam and again diverted the waters of said Jackson creek away from said creek and deprived plaintiff thereof, and defendant prevented by force the employees of plaintiff

from removing said dam and restoring said waters again to their natural channel, and since said last-mentioned day has maintained said dam, diverted said waters and threatens to continue so to do; that, by reason of said acts of defendant and the diversion by him of said waters of the South Fork of Scott river and its tributaries, plaintiff has been compelled to entirely suspend its mining operations and has thereby suffered great injury and has been damaged in the sum of four thousand five hundred dollars, and that such damage will continue at the rate of three hundred dollars for each and every day that defendant hereafter maintains said dam, diverts said waters and deprives said plaintiff of the use thereof; that the said acts of defendant if continued will cause plaintiff irreparable injury and tend to lessen the value of its said mining lands, and unless restrained by order of this court defendant will gain as against plaintiff herein a prescriptive right to the said waters of Jackson creek, the said tributary of said South Fork of Scott river, and said waters will be wholly lost to plaintiff herein; that the use of plaintiff and its predecessors in interest of the said waters of the said South Fork of Scott river and its tributaries during all the time they have used the same have been peaceable, quiet, open, notorious, continuous, and exclusive, except for the interference made by defendant as hereinbefore set forth, and under a claim of right and title thereto, and such use has been adverse to all the world."

It will be observed that the complaint declares upon two different and distinct claims of title to the use of the water flowing in said Scott river to which plaintiff alleges that it is entitled: 1. That the lands described in the complaint are riparian to said South Fork of Scott river; 2. That plaintiff is entitled to the right to use the quantity of said waters stated in the complaint by appropriation.

The affidavit of the defendant himself consists largely of specific denials, in the language of the complaint itself, of the facts set forth in the latter. There are some allegations contained in said affidavit of a right, acquired by appropriation, in defendant to the use of the waters referred to in the complaint for mining, agricultural, domestic and irrigation purposes. But most, if not all, these last-mentioned allegations involve, at best, only legal conclusions or conclusions of

the affiant. It is unnecessary to reproduce these averments or the substance thereof here, for it is sufficient to say that, even if they involved the statement of probative facts, it would, under the authorities to which we have referred, still rest with the trial court to decide, upon the whole record as made upon the preliminary issue, whether an injunction *pendente lite* should or should not be granted.

The affidavit of one Hayden, filed on behalf of the defendant, merely declares "that the statements contained in the said affidavit of said defendant" concerning all the important matters respecting which said defendant deposes "are true and correct," and, manifestly, such an affidavit can have no greater force than to corroborate the conclusions contained in the defendant's affidavit.

But it is objected that the complaint itself is insufficient, as *evidence,* to sustain the order of the court granting the injunction, since its averments are of ultimate rather than of probative facts.

Section 527 of the Code of Civil Procedure provides that "an injunction may be granted at any time before judgment upon a *verified complaint,* or upon affidavits, if the complaint in the one case, or the affidavits in the other, show satisfactorily that sufficient grounds exist therefor. . . ."

We are fully mindful of the general rules which are laid down for the guidance of the courts in the matter of applications for an injunction, pending the litigation, and before the cause in which such temporary relief is sought is heard upon the merits. As is said by Mr. Joyce, in his work on Injunctions, "an injunction of this character (temporary) is said to be an act of extraordinary power on the part of the court, in behalf of either party to an action before trial, is always cautiously granted, and it must fairly appear upon all the papers presented, before such injunction is granted, that the plaintiff will suffer irreparable injury if it be not issued, or that it is necessary to preserve the estates of the parties, or some sufficient cause showing the need of hasty action exists."

As seen, our code provides that a preliminary injunction may be granted if it is satisfactorily shown by the *complaint* or the affidavits, if any be filed, that sufficient grounds exist therefor.

Obviously, the question whether it is satisfactorily shown by the verified complaint or the affidavits that grounds exist for the granting of an interlocutory injunction must be determined by the court to which such application is submitted in the first instance. If, as here, it be granted on the verified complaint alone, and the facts stated are sufficient to warrant the granting of the temporary relief so sought, and the same has been granted, this court is bound to assume that it has thus been satisfactorily shown to the court that grounds exist for such relief, and that in granting the same the court has acted with due caution and regard for the rights of the opposing party. Nor can this court say, merely because the complaint contains the statement of none but ultimate facts, that the trial court abused its discretion in granting the injunction. The statute, as seen, expressly provides that a preliminary injunction may be granted on a verified *complaint,* and it is not for a moment supposable that the legislature intended that the complaint which may be used for that purpose should be any different, in the character of its averments, from any other complaint in a civil action, or from a complaint whose sole purpose is to subserve the office of a pleading. In other words, we do not understand the phrase, "verified complaint," as used in the section of the Code of Civil Procedure authorizing a court to grant a preliminary injunction upon the averments thereof, means that such complaint shall allege, for the purposes of the application for the order, probative as distinguished from ultimate facts. If the ultimate facts pleaded warrant the granting of the injunction, then, in the absence of such a countershowing as would fully overcome or impeach the effect of the averments of the complaint, or as would produce serious doubt whether the right to the temporary relief claimed by the complaint should be granted, it would be the duty of the court to grant such relief. And, as stated, whether the showing made by the complaint is sufficiently negatived by the opposite party to compel the refusal of the temporary injunction, is a matter the determination of which rests in the sound discretion of the trial court, and with which discretion interference by an appellate court is not justified unless it clearly appears, from the whole record, that there has been an abuse thereof.

Of course, the allegations of the complaint should disclose a clear right to an injunction *pendente lite* by showing that the plaintiff is entitled to the exclusive enjoyment as against defendant of the right with which it is alleged the defendant is wrongfully interfering and threatens to continue to so interfere. The allegations should, by appropriate averments, clearly show that irreparable injury to plaintiff would follow the refusal of the court to allow the temporary relief, and that such injury could not adequately be repaired or redressed by way of pecuniary compensation or damages.

The complaint in this action, it will be observed, alleges plaintiff's right to use the waters in dispute by appropriation and the right to the same as a riparian owner; that the use of said waters is necessary for its purposes in the prosecution of its mining enterprises; that, by reason of the acts of defendant in diverting the waters of Scott river and its tributaries, at a point above the lands of plaintiff riparian to said river and its tributaries, and to a certain quantity of which waters plaintiff also claims the right by appropriation, the rights of said plaintiff, as a riparianist, have been and will be interfered with, and that, as an appropriator, it has been and will be deprived of the use of the waters of said streams necessary for its aforesaid purposes; that, by reason of the said acts of defendant in so diverting said waters, the plaintiff has been compelled, and is still compelled, to suspend its aforesaid mining operations, and that thereby the defendant has inflicted upon plaintiff serious injury, and that the continued diversion of said waters by defendant and the consequent continued suspension of such mining operations by plaintiff will cause plaintiff irreparable injury. Assuming that other points against the sufficiency of the complaint to justify the order granting the preliminary injunction, to which points we shall later refer, are without merit, the averments of the complaint, uncontradicted, are sufficient, in our opinion, to warrant and sustain the action of the court in granting the injunction. At any rate, said averments are of such a character as to justly forestall a declaration by this court that the court below abused its discretion in the matter. The question then arises whether the showing made by the defendant in rebuttal of the averments of the complaint is such as to so overcome the force of the latter as to warrant

this court in declaring that the granting of the order was an abuse of the discretion vested in the trial court.

It is obvious that we cannot so declare unless we are prepared to say that the court below should have accepted as true the denials and conclusions contained in the defendant's affidavits in preference to the averments of the complaint, or that the denials and allegations contained in said defendant's affidavits were of a character to create so much doubt as to plaintiff's showing or claim of right, either as a riparianist or an appropriator, to the temporary remedy granted as to make it clear to this court that the trial court exceeded the bounds of a sound discretion in allowing the order. We cannot say that the record presents such a situation to our minds.

As before stated, the statute contemplates and intends, of course, that the showing for a preliminary injunction must satisfy the court to which the application therefor is made and not a court of review. The latter can interfere only where it may be said, from the record, as a matter of law, that the showing made is not sufficient to satisfy the court below that grounds for the injunction existed, or such as to clearly indicate that the action of the trial court in granting the injunction was arbitrary rather than the result of the exercise of a sound discretion.

It is very clear that some power must be left to the trial judge to determine whether the counter-showing made by the defendant is of sufficient force to overcome the effect of the affirmative showing by the plaintiff, and where, as here, the ultimate facts upon which plaintiff bases its claim for the protection and preservation of its alleged rights against the acts of defendant until the main question to be tried shall be finally adjudicated, are met by a reply consisting likewise of the statement of ultimate facts, in so far as such reply undertakes to affirmatively disclose that the acts charged against the defendant are only in the exercise of his own rights, then we cannot perceive how a court of review may be justified in saying that the decision of the trial court on such a record involves an abuse of discretion, particularly when we keep in mind the fact that the code expressly provides that a preliminary injunction may be granted on a verified complaint.

But counsel point out some alleged inconsistencies and defects in the complaint which, it is contended, disclose such

inherent weakness in the evidence as thus presented as to make it clearly appear that the court was wholly unwarranted in granting the application for the temporary injunction.

In this regard, the point is first made that, while, as a *pleading,* the complaint is not subject to criticism because there are united therein two separate and distinct causes of action for practically the same purpose, which causes of action are, in certain particulars, antagonistic to each other, yet where, as here, the averments of such pleading are used as *evidence* or for the purpose of establishing the fact in issue, such averments must not be inconsistent or contradictory in any material respect, otherwise the effect of the averments of the one cause of action will be to impeach the averments of the other. Or, to adopt the language of the brief, "it would be unconscionable to permit the party to introduce contradictory evidence or proof upon any subject involved in the action. When evidence upon which the party relies is introduced, it must be harmonious and consistent throughout all its parts."

We think there are several answers to the foregoing proposition. First, as we have seen, the plaintiff, upon the filing of its complaint and upon an order to show cause why a temporary injunction should not be granted, was entitled to the temporary relief upon its verified complaint, assuming that the latter makes a proper case. (Code Civ. Proc., sec. 527; *Falkinburg* v. *Lucy,* 35 Cal. 60, [95 Am. Dec. 76].) If the complaint is sufficient as a *pleading,* it is then, by virtue of the provisions of the code to which we have referred, sufficient as the predicate of an order granting the preliminary injunction or as *evidence* for that purpose. If there be united in the complaint two different causes of action, both seeking practically the attainment of the same ultimate object, it does not follow, merely because certain averments of the one cause of action so pleaded may be in some material particulars contradictory to or inconsistent with those of the other cause stated, that the temporary injunction should be refused, if either or both causes disclose a reason for the granting of such temporary relief.

Nor do we understand it to be or to have ever been the rule that evidence addressed to the proof of a particular fact, to be of any value, "must be harmonious and consistent throughout all its parts." The general rule is that it is for the trier

of the facts to determine the value, the weight and the effect of evidence, through whatever instrumentality it may come. Indeed, if it were the rule that a party could not prevail unless the evidence he produced to establish his case or his defense was "harmonious and consistent throughout all its parts," there could seldom ever be success in an attempt to prove an ultimate fact or to establish a defense.

But we can perceive no inconsistency, fatal to plaintiff's right, if it shows any at all, to the preliminary injunction, between its claim to a riparian right to the waters of the streams mentioned in the complaint and a claim to such waters by appropriation. We know of no reason why a party may not acquire by appropriation a right to the use of the water of a stream to which his lands are riparian. And, in such case, where another, without right, diverts the water of such stream at a point above the lands of such riparianist and appropriator, and thus wrongfully so obstructs the customary flow of the stream as to deprive the latter of the full use of the water to which he is entitled, either as a riparian proprietor or an appropriator, then we can see no impropriety in the injured party pleading and proving, if he can, such wrongful interruption of his right to the water both as a riparianist and as an appropriator. Indeed, the proposition here we conceive to be practically no different from a case where a plaintiff might allege and so be allowed to prove a conventional title to land, and at the same time allege and be allowed to show, if found necessary, that he had acquired title thereto by adverse possession. In the case here, it may happen that the plaintiff may utterly fail to establish in himself riparian ownership of the waters of the South Fork of Scott river and its tributaries, yet may have ample proof to establish his right to use such waters as an appropriator, or *vice versa.* If, in either case, as is the charge, the defendant is wrongfully interrupting plaintiff in the full exercise of the right to the water from either source—i e., either as a riparian owner or an appropriator—then certainly it would be entitled to the prohibitory relief for which it prays. In other words, the fact that plaintiff might not be able to sustain, by proof, one cause of action stated in the complaint, would not constitute any reason for denying to it relief as to the other cause of action, if the latter be supported by sufficient evidence.

As against the right of plaintiff to be protected in the enjoyment of its riparian rights, there is no merit in the suggestion that the complaint, in the first alleged cause of action stated therein, discloses that the purpose for which plaintiff has used and intends to use the water from the South Fork of Scott river is and will not be a riparian use thereof, and that, therefore, said cause of action fails to show that plaintiff has been or will be injured by the alleged wrongful acts of defendant. The rights of a riparian proprietor as such are not to be tested by the use or uses to which he puts the riparian waters, or whether he uses them at all or not. If one's lands are riparian to a stream of water, the owner of the lands cannot be divested of his rights as a riparianist merely because he may either put the waters flowing in such stream to other than a riparian use or not use them for any purpose at all. Nor would a nonriparian owner of the waters of the same stream for such reason alone be permitted to divert the waters of such stream. The right of riparian proprietors, says the supreme court, in *Huffner* v. *Sawday,* 153 Cal. 91, [94 Pac. 426], ''to restrain the diversion, by others than riparian owners, of water which would, if undisturbed, flow past their lands, does not rest upon the extent to which they have used the water, nor upon the injury which might be done to their present use. Even if these plaintiffs had never made any use of the water flowing past their land, they had the right to have it continue in its customary flow, subject to such diminution as might result from reasonable use by other riparian proprietors. This is a right of property, 'a part and parcel' of the land itself (*Duckworth* v. *Watsonville W. & L. Co.,* 150 Cal. 520, [89 Pac. 338]), and plaintiffs are entitled to have restrained any act which would infringe upon this right.''

But it is further objected against the order appealed from that the averments of the complaint should have been fortified by evidence in the form of an affidavit that either the plaintiff ''was entitled to the flow of the waters of Jackson creek through a usual or natural channel through plaintiff's land, and that the lands claimed to be owned by plaintiff were in some form riparian to the waters of Jackson creek, or such evidence should have been furnished by plaintiff showing or tending to show that plaintiff was an appropriator of the

water right claimed by the complaint, together with the particulars as to the means and method of the diversion or appropriation by plaintiff and the continuation of its use and the necessity therefor.''

As seen, there was either one of two ways, pointed out by the code, by which plaintiff was entitled to ask for and receive, if its showing was satisfactory to the court, the interlocutory injunction: 1. By and on the complaint; 2. By and on affidavits. Plaintiff adopted the first course, and if the allegations of the complaint were sufficient, the court was authorized to grant the order on said complaint, in which it is alleged that Jackson creek is a tributary of the South Fork of Scott river; that defendant diverted away from said Jackson creek one hundred and fifty inches of water, thus and thereby lessening the flow of water in Scott river, and, therefore, necessarily depriving plaintiff of the flow in the latter to which it was entitled as a riparianist. These averments were sufficient to show plaintiff's riparian right to the flow of water in any creek or stream tributary to and emptying its waters into said river. It is hardly necessary to suggest that no one has a right to interfere with riparian rights by diverting the waters of a stream which is a tributary of the stream to which the lands of a party are riparian any more than to interfere with such rights by diverting the flow from the main stream itself. It would be only commonplace to say that interference with or diversion of the sources from which a creek or river obtains its supply of water is an interference with or diversion of the waters of the stream itself.

As to the objection to the complaint on the ground that it fails to state, or is unsupported by an affidavit that does state, the particulars or the circumstances by which plaintiff acquired the water right claimed by it by appropriation, we need only repeat that the complaint itself is sufficient in this regard without an affidavit, and that the statute requires no affidavit where the application is made on the complaint. In such case, the application must stand or fall on the averment of ultimate facts. Whatever may be required in affidavits where they are used on such application—whether they must or must not state, as is usual in such documents, probative facts—the statute does not require the complaint in such a case to be more than a pleading. The pleading of the particular acts required

to be done in order to acquire a water right by appropriation would amount to nothing less than the pleading of probative facts.  If the legislature had intended that, where an application for a preliminary injunction is made upon the complaint, the latter should, for that purpose, set forth probative facts, or that the complaint, for that purpose, should be in the nature of an affidavit or a deposition, or that it should be supported by an affidavit, it would certainly have said so in plain terms. The legislature not having so declared, we take it that it was intended that the *complaint* upon which such an order might be made need be no more than a pleading, containing, of course, a sufficient statement of the ultimate facts to satisfy the court that there exist grounds for the temporary relief.

We cannot say, from the record before us, that the trial court abused its discretion in granting the order from which this appeal is prosecuted.

The order is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.